IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARLENE K. REED,

        Plaintiff,

v.                //   CIVIL ACTION NO. 1:16CV154
                             (Judge Keeley)

RICKEY SELL, SR.;
MASTERFUL DESIGNS, LLC; and
BRANDON CLYDE, individually
and in his official capacity;

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

The plaintiff, Marlene K. Reed ("Reed"), filed a second amended complaint on November 21, 2016, in which she alleged that the defendants had violated her constitutional rights and also were liable for fraud and conversion (Dkt. No. 35). Now pending is the motion to dismiss that complaint filed by the defendants, Rickey Sell Sr. ("Sell") and Masterful Designs, LLC ("Masterful Designs") (Dkt. No. 48). Also pending is the motion for summary judgment filed by the defendant, Town of Barrackville Police Officer Brandon Clyde ("Officer Clyde") (Dkt. No. 50). For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the motions.

## I. BACKGROUND

### A.   Factual Background

The Court's recitation of the facts is taken from Reed's second amended complaint (Dkt. No. 35), which the Court construes

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

in the light most favorable to Reed. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). In 2008, Reed purchased a home in Barrackville, West Virginia, with financing secured from First Exchange Bank. At the time she purchased the home, Reed worked in the food service industry. After suffering a stroke in July 2014, she ultimately was forced to stop working in May 2015. While Reed was hospitalized, her home was referred to foreclosure without her knowledge. On June 26, 2015, the home was auctioned to Masterful Designs at the Marion County Courthouse for the sum of $62,500.

In July 2015, Sell, the owner and operator of Masterful Designs, set about taking possession of Reed's home. On July 9, 2015, without filing an unlawful detainer action or giving Reed notice of the transfer of property, he went to her home "and told her he had closed on her house that day, and that she had to vacate the premises." He further advised Reed that she had "to vacate the property within a few days" because his crew planned to begin working on the house four days later.

The next day, July 10, 2015, Sell returned with several men, who began going through Reed's house and outbuilding. As Reed and her family and friends were packing her belongings, Sell

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

continually harassed her to work faster and "told her that if she was not out by the following day, he would have her arrested."[1] Later that evening, Officer Clyde arrived at the home and, after conversing with Sell, told Reed that he would arrest her if she was not off the property by the next day. This led Reed to believe that Sell and Masterful Designs were acting lawfully, and that she would be subject to arrest if she did not comply with Sell's demands. In addition, Sell changed the locks on Reed's house despite telling her that she would have until the next day to vacate the property.

Finally, on July 11, 2015, Sell returned to the house as Reed frantically attempted to pack the remainder of her belongings. Sell made this task more difficult by blocking the driveway and refusing to permit Reed to remove a portable air conditioner she recently had purchased. Thereafter, Sell made a phone call, and Officer Clyde again arrived at the property to inform Reed that he would arrest her if she was not gone by that night.

---

[1] In her deposition taken during limited jurisdictional discovery, Reed inconsistently testified both that Sell did and did not threaten her with arrest (Dkt. No. 51-2 at 14). Due to the sufficiency of Officer Clyde's alleged actions, this factual dispute does not affect the Court's subject matter jurisdiction, and it declines to consider the issue at this time.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS' MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

Believing Officer Clyde's threat of arrest to be genuine, Reed left the house that evening, and, in the process, abandoned a significant amount of personal property, including a love seat, four televisions, dishes, clothing, two lawn mowers, and many items of personal value. Because Reed was staying with her next door neighbor, she was able to observe Sell and his wife search through her personal property, "discarding some items and loading others into their car." She estimates that the value of this property exceeds $12,000. Reed has remained homeless since being forced from her house, and has had to store her belongings at a cost of $160 per month.

**B.    Procedural Background**

On July 14, 2016, Reed filed a complaint against Sell, Masterful Designs, the Town of Barrackville, Police Officer William Piggot ("Officer Piggot"), and Police Chief Chuck Wilson ("Chief Wilson"), alleging violations of her federal constitutional rights under 42 U.S.C. § 1983, violations of her civil rights under the West Virginia Constitution, and state tort claims of fraud and conversion (Dkt. No. 1).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

At a scheduling conference held on October 25, 2016, the parties expressed doubt about whether the defendant Officer Piggot actually had been at Reed's home during the dates in question. Perceiving that the presence and involvement of state actors presented a threshold question regarding its federal question jurisdiction, which turns on the viability of Reed's claims pursuant to § 1983, the Court ordered a period of limited discovery on the jurisdictional issue and extended the schedule for Reed's responses to the defendants' then-pending motions to dismiss (Dkt. No. 26).

Thereafter, on November 21, 2016, with leave of Court, Reed filed a second amended complaint, substituting Officer Clyde for Officer Piggot (Dkt. No. 35). Her claims are as follows: 1) violation of civil rights under § 1983 and the Fourth Amendment, 2) violation of civil rights under § 1983 and the Fourteenth Amendment, 3) violation of civil rights guaranteed by Article III, § 6, of the West Virginia Constitution, 4) violation of civil rights guaranteed by Article III, §§ 10 and 17, of the West Virginia Constitution, 5) fraud, and 6) conversion. Id. at 6-9. The Town of Barrackville, Officer Clyde, and Chief Wilson all answered

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

the second amended complaint on December 23, 2016 (Dkt. No. 41),
but the parties later stipulated to the dismissal of the Town of
Barrackville and Chief Wilson on February 9, 2017 (Dkt. No. 44).

On February 10, 2017, in light of the filing of Reed's second
amended complaint, the Court denied the pending motions to dismiss
as moot, and directed the defendants to file any further motions to
dismiss (Dkt. No. 45). On March 3, 2017, Sell and Masterful Designs
moved to dismiss the second amended complaint for failure to state
a claim (Dkt. No. 48), and Officer Clyde moved for summary
judgment, claiming statutory immunity regarding Reed's state law
claims, and that the second amended complaint failed to state a
claim against him (Dkt. No. 50).[2] Both motions are fully briefed
and ripe for review.

---

[2] Notably, the Court's preliminary schedule in this case
encompassed only a brief period of jurisdictional discovery and the
defendants' motions to dismiss. Officer Clyde, however, chose to
file a motion for summary judgment, perhaps because he chose to
answer Reed's second amended complaint, rather than move to dismiss
based on his argument that the complaint fails to state a claim
upon which relief can be granted. Moreover, his motion for summary
judgment indiscriminately conflates an argument that Reed's
complaint fails to state a claim with an argument that limited
jurisdictional discovery has established that there is no genuine
dispute of material fact. Given the early stage of these
proceedings and the Court's clear direction, it will consider only
Officer Clyde's argument that the second amended complaint fails to
state a claim.

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for
dismissal on the grounds that a complaint does not "state a claim
upon which relief can be granted." When reviewing the sufficiency
of a complaint, a district court "must accept as true all of the
factual allegations contained in the complaint." Anderson v. Sara
Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v.
Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not
need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A
court is "not bound to accept as true a legal conclusion couched as
a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough
facts to state a claim to relief that is plausible on its face.'"
Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547).
"A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

## III. DISCUSSION

### A.   Federal Constitutional Claims

Reed alleges that the defendants deprived her of the right to be free from unreasonable seizures and the right to receive procedural due process (Dkt. No. 35 at 6-7). Because these claims present a federal question and form the only possible basis for the Court's subject matter jurisdiction, the threshold issue is whether Reed's second amended complaint contains allegations sufficient to state a claim under 42 U.S.C. § 1983 for the violation of her Fourth or Fourteenth Amendment rights.

Section 1983 provides a cause of action against persons who, under color of state law, deprive a citizen of "rights, privileges, or immunities secured by the Constitution or laws." "Section 1983 'is not itself a source of substantive rights,' but merely provides a method for vindicating federal rights elsewhere conferred."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To state a claim for relief under § 1983, Reed must allege both 1) that she was "deprived of a right secured by the Constitution or laws of the United States," and 2) "that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

Because § 1983 imposes liability only for acts taken "under color of state law," Reed's allegations against Sell and Masterful Designs – both private parties – inject an inherent tension into her federal claims. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 930 (1982). The questions raised by these allegations include whether Reed has stated a claim for deprivation of rights secured by the Fourth and Fourteenth Amendments, and if so, whether the defendants allegedly were acting under color of state law at the relevant time.

### 1. Deprivation of Constitutional Rights

#### a. Fourth Amendment Rights

Count One of Reed's complaint alleges that the defendants violated her rights under the Fourth Amendment by unlawfully

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

seizing her real and personal property (Dkt. No. 35 at 6).[3] Officer
Clyde argues that no Fourth Amendment violation occurred in this
case because he never handled Reed's "personal property or seized
any item of property from her house" (Dkt. No. 51 at 17).[4]

The Fourth Amendment protects "the right of the people to be
secure in their persons, houses, papers, and effects against
unreasonable searches and seizures." U.S. Const. amend. IV. Whether
Reed has alleged a violation of her Fourth Amendment rights thus
depends on 1) whether her property was seized, and, if so, 2)
whether that seizure was unreasonable. See Altman v. City of High
Point, N.C., 330 F.3d 194, 200-05 (4th Cir. 2003).

First, all personal property constitutes an "effect" within
the meaning of the Fourth Amendment. See id. at 203. "A 'seizure'

---

[3] It is important to note that Reed does not allege an
unlawful search, nor that she experienced an unlawful seizure of
her person – as opposed to her property – when the defendants
threatened her arrest (Dkt. No. 53 at 11). Officer Clyde frequently
combines his argument concerning Reed's actual claim with an
argument regarding searches of property and seizures of persons not
at issue in this case (Dkt. No. 51 at 12-16).

[4] Sell and Masterful Designs seek dismissal of Reed's federal
constitutional claims based solely on the fact that they are not
affiliated with the government (Dkt. No. 29 at 5-7). Whether the
defendants acted under color of state law is discussed later in
this memorandum opinion.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

of property occurs when there is some meaningful interference with

an individual's possessory interests in that property." United

States v. Brown, 701 F.3d 120, 125 n.7 (4th Cir. 2012) (quoting

United States v. Jacobsen, 466 U.S. 109, 113 (1984)). Permanent

deprivation of one's personal property qualifies as meaningful

interference with a possessory interest. Altman, 330 F.3d at 205

(reasoning that killing a dog is a seizure because it is the

permanent deprivation of one's effect).[5]

Here, Reed alleges that, on at least two occasions, Officer

Clyde came to her home and threatened to arrest her if she did not

vacate the property by July 11, 2015 (Dkt. No. 35 at 4-5). Due to

---

[5] Although it clearly is possible to meaningfully interfere
with another's possessory interest in real property, Presley v.
City of Charlottesville, 464 F.3d 480, 487 (4th Cir. 2006), Reed's
allegations regarding the sale of her home at foreclosure establish
that she no longer had a possessory interest in her home at the
time of the alleged seizure. Moreover, at the scheduling conference
on October 25, 2016, Reed conceded that a deed of sale had been
recorded and that the property had legally transferred to Masterful
Designs. Therefore, her argument that the defendants unlawfully
seized her real property is unavailing. Nor does the Supreme
Court's decision in Soldal v. Cook County, on which Reed relies,
compel a contrary conclusion; that case dealt with dispossession of
a mobile home, which the plaintiffs indisputably owned, during the
course of an eviction from a trailer park. 506 U.S. 56, 61 (1992)
("We fail to see how being unceremoniously dispossessed of one's
home in the manner alleged to have occurred here can be viewed as
anything but a seizure invoking the protection of the Fourth
Amendment.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

these threats, Reed believed that Sell's actions were lawful and she would be subject to arrest if she did not follow Sell and Officer Clyde's directions. Id. Thus, when Reed left her home for the final time on July 11, 2015, she abandoned numerous items of personal property that she did not have time to remove. Id. at 5.

Taking these allegations in the light most favorable to Reed, De'Lonta, 708 F.3d at 524, she clearly contends that the defendants permanently deprived her of valuable personal property by forcing her to abandon it through the threat of arrest. Reed thus has alleged the "seizure" of her "effects" within the meaning of the Fourth Amendment. See Altman, 330 F.3d at 205.

The second question is whether the alleged seizure was reasonable, as the Fourth Amendment only proscribes "unreasonable searches and seizures," and "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Kentucky v. King, 563 U.S. 452, 459 (2011) (alteration in original) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). "A seizure of personal property conducted without a warrant is presumptively unreasonable." Altman, 330 F.3d at 205 (citing United States v. Place, 462 U.S. 696, 701 (1983)).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

To determine whether such a seizure is objectively reasonable, however, "a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion." Id. (quoting Place, 462 U.S. at 703). For instance, if "officers [are] acting pursuant to a court order . . . a showing of unreasonableness . . . would be a laborious task." Soldal, 506 U.S. at 71.

Here, the reasonableness balancing test weighs heavily in favor of Reed. On the one hand, Reed allegedly has suffered the permanent deprivation of at least $12,000 of personal property, including a love seat, four televisions, dishes, clothing, two lawn mowers, and many items of personal value. This is undoubtedly a significant intrusion on her right to be free from such seizures under the Fourth Amendment. On the other hand, the defendants have not asserted any important governmental interest that encompasses the alleged seizure, nor any reason that threats of arrest would have been reasonable under the circumstances.

Threatening Reed with arrest if she did not leave the property in a certain amount of time was unnecessary to diffuse the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

situation confronting Officer Clyde.[6] Taking Reed's allegations as
true, the Court can discern no "split-second judgments" for which
Officer Clyde would be owed deference in the "calculus of
reasonableness." See Graham v. Connor, 490 U.S. 386, 396-97 (1989).
Nor has Officer Clyde suggested that he was acting pursuant to a
court order, Soldal, 506 U.S. at 71, or that the seizure was
related to the exigencies of the circumstance, as may often be the
case during an investigation. See Place, 462 U.S. at 701-02.

Finding no governmental interest at stake in the permanent
deprivation of Reed's personal property, the Court concludes that
her second amended complaint alleges a constitutionally proscribed
seizure of objectively unreasonable character. Therefore, Reed has
stated a claim for the violation of her Fourth Amendment rights.

### b.    Fourteenth Amendment Rights

Count Two alleges that the defendants violated Reed's
Fourteenth Amendment right to procedural due process when they
failed to give her "reasonable notice prior to the seizure of her
real and personal property" (Dkt. No. 35 at 7). Officer Clyde

---

[6] Nor is it clear that Officer Clyde had any authority to make
such a threat. During jurisdictional discovery, he testified that
the Marion County Sheriff's Department, not municipal police
departments, handle evictions (Dkt. No. 51 at 6).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

contends that Reed's allegations fail to state a claim under the Fourteenth Amendment because he did not deprive her of any right guaranteed by the Constitution (Dkt. No. 51 at 19-21).

"Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." <u>Soldal</u>, 506 U.S. at 70. In addition to her Fourth Amendment claim, Reed may state a claim for the violation of her procedural due process rights by alleging that "(1) [she] had property or a property interest (2) of which the defendant deprived [her] (3) without due process of law." <u>Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach</u>, 420 F.3d 322, 328 (4th Cir. 2005).

Under established Supreme Court and Fourth Circuit precedent, however, there can be no procedural due process claim pursuant to § 1983 when a defendant's actions are random and not authorized by the state, and the state "affords a meaningful post-deprivation remedy." <u>Bogart v. Chapell</u>, 396 F.3d 548, 561 (4th Cir. 2005). As the Fourth Circuit aptly summarized in <u>Bogart</u>:

> In its 1981 <u>Parratt</u> decision, the Supreme Court considered whether an inmate at a Nebraska prison, who ordered $23.50 worth of hobby materials by mail, could sustain a § 1983 procedural due process claim for the negligent loss of the materials by prison officials. The Court was concerned with, <u>inter alia</u>, whether it was

15

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

practicable for the State to provide a predeprivation
hearing, and whether the postdeprivation tort remedies
provided by the State were constitutionally sufficient.
The Court concluded that the prisoner did not possess a
viable § 1983 claim because, in relevant part, "the
deprivation did not occur as a result of some established
state procedure" but rather "as a result of the
unauthorized failure of agents of the State to follow
established state procedure," and because "the State of
Nebraska has provided respondent with the means by which
he can receive redress for the deprivation." Of key
significance, the loss of the prisoner's property was the
"result of a random and unauthorized act by a state
employee." The Court explained that, because the State
could not predict precisely when such a loss would occur,
the State could not be expected to provide a meaningful
predeprivation hearing.

The Court extended its Parratt holding, in its 1984
Hudson decision, to intentional deprivations of property.
The plaintiff in Hudson, an inmate at a Virginia prison,
alleged that a correctional officer had intentionally
destroyed some of the prisoner's noncontraband property
during a search of his cell. The lower courts, including
this Court, had concluded that the logic of Parratt
applied equally to unauthorized intentional deprivations
of property by state employees. The Supreme Court agreed,
explaining that "[t]he underlying rationale of Parratt is
that when deprivations of property are effected through
random and unauthorized conduct of a state employee,
predeprivation procedures are simply 'impracticable'
since the state cannot know when such deprivations will
occur." Thus, under the Parratt/Hudson doctrine, such a
deprivation "does not constitute a violation of the
procedural requirements of the Due Process Clause of the
Fourteenth Amendment if a meaningful postdeprivation
remedy for the loss is available."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

Id. at 559-60 (internal citations omitted). The Parratt/Hudson
doctrine, however, does not apply when a deprivation is
foreseeable, pre-deprivation process could have been provided, and
the deprivation is accomplished at the hands of a state actor
vested with discretion to do so. Id. at 560 (citing Zinermon v.
Burch, 494 U.S. 113 (1990)).

     The Fourth Circuit recently elucidated the Parratt/Hudson
doctrine in Bogart. There, the plaintiff housed over 200 cats and
dogs on her residential property in an effort to prevent their
euthanization by local shelters. Id. at 551. After receiving
complaints from local veterinarians regarding the number and
condition of the animals, the co-chairman of the local humane
society asked the sheriff's department to investigate. Id. at 551-
52. Ultimately, on November 17, 1999, law enforcement and animal
control officers executed a search warrant at the plaintiff's home,
arrested her for ill treatment of animals, and seized 82 dogs and
129 cats. Id. at 552-53. Despite their duty under South Carolina
law to care for the animals pending the outcome of related civil or
criminal proceedings, the officers indiscriminately euthanized
"[a]ll but two of the dogs and some of the cats . . . by the

following morning," when the plaintiff was released from custody
and arrived to claim the animals. Id.

The plaintiff filed suit, alleging, among other things, that
the various defendants had violated her procedural due process
rights without a pre-deprivation hearing. Id. at 553. The district
court applied the Parratt/Hudson doctrine and granted summary
judgment to the defendants. The Fourth Circuit affirmed, reasoning
that "[t]he doctrine controls the viability of [the plaintiff's]
claim because the euthanization of [her] animals by the Defendants
was random and unauthorized, and because . . . South Carolina
affords a meaningful post-deprivation remedy." Id. at 561.
Moreover, South Carolina could not have foreseen the defendants'
acts because they had no authority - discretionary or otherwise -
to euthanize the animals. Id.

Here, even assuming that the defendants deprived Reed of
protected interests without due process,[7] her allegations establish

---

[7] Although "property interests protected by procedural due
process extend well beyond actual ownership of real estate,
chattels, or money," Board of Regents of State Colleges v. Roth,
408 U.S. 564, 571-72 (1972), it is far from clear that West
Virginia's unlawful detainer procedures establish such a protected
interest when the plaintiff has no possessory interest in the real
property at issue. See generally Mills v. Cty. of Lapeer, No. 2:09-
cv-14026, 2011 WL 669389, at *12-*13 (E.D. Mich. Feb. 17, 2011)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

no viable cause of action under the Fourteenth Amendment. Reed
alleges only that Sell and Masterful Designs failed to file an
unlawful detainer action or to give her notice that the property
had been transferred (Dkt. No. 35 at 3). Consequently, she
contends, they deprived her of real and personal property without
"reasonable notice." Id. at 7.

The unlawful detainer procedure to which Reed refers can be
found at W. Va. Code § 55-3-1. See Tribeca Lending Corp. v.
McCormick, 745 S.E.2d 493, 496 & n.4 (W. Va. 2013). That section
provides for an action against unlawful occupants:

> If any forcible or unlawful entry be made upon any land,
> building, structure, or any part thereof, or if, when the
> entry is lawful or peaceable, the tenant shall detain the
> possession of any land, building, structure, or any part
> thereof after his right has expired, without the consent
> of him who is entitled to the possession, the party so
> turned out of possession, no matter what right or title
> he had thereto, or the party against whom such possession
> is unlawfully detained, may, within three years after
> such forcible or unlawful entry, or such unlawful
> detainer, sue out of the clerk's office of the circuit
> court, or of any court of record empowered to try
> common-law actions, of the county in which the land,
> building, structure, or some part thereof may be, a
> summons against the defendant to answer the complaint of
> the plaintiff that the defendant is in the possession of,

---

(reasoning that Michigan's eviction procedures do "not create a
substantive property interest," but merely embody "a state
procedural safeguard granted to those lacking such an interest").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

and unlawfully withholds from the plaintiff, the premises in question (describing the same with convenient certainty), to the damage of the plaintiff in such sum as the plaintiff shall state; and no other declaration shall be required.

W. Va. Code § 55-3-1.

The gravamen of Reed's second amended complaint is not that the state failed to provide sufficient process, but rather that the defendants failed to utilize "the appropriate judicial process, or otherwise provid[e] her with reasonable notice of the seizure" (Dkt. No. 53 at 15-16) (emphasis added). Much like the defendants' unauthorized euthanizations in Bogart, the defendants' alleged failure to abide by the appropriate procedures in this case can be fairly characterized as a "random and unauthorized" departure from their authority. Bogart, 396 F.3d at 563. "[I]t truly is impossible for the state to provide predeprivation procedural due process before a person unpredictably is deprived of [her] liberty or property through the unauthorized conduct of a state actor." Plumer v. Maryland, 915 F.2d 927, 930 (4th Cir. 1990) (quoting Caine v. Hardy, 905 F.2d 858, 862 (5th Cir. 1990)).

To protect against such an unauthorized and unforeseen departure, West Virginia need only provide "a meaningful

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS' MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

postdeprivation remedy for the loss," Bogart, 396 F.3d at 563, and state-law tort actions fulfill this requirement. See, e.g., Hudson v. Palmer, 468 U.S. 517, 531 n.11 (1984); Bogart, 396 F.3d at 556, 563. Indeed, West Virginia provides a common law cause of action for conversion, see infra Part III.D, and municipal employees can be held liable for tortious actions that are taken outside the scope of their employment or with malicious or reckless intent. See W. Va. Code § 29-12A-5(b); Hudson, 468 U.S. at 531 n.11 (noting that postdeprivation procedures need not entitle the claimant to "all the relief to which he might have been entitled under § 1983"). This satisfies the requirements of due process. Accord Trump Tight, LLC v. Bell, 188 F. Supp. 3d 565, 574 (E.D. Va. 2016); Tate v. Smith, No. 1:14cv125, 2017 WL 1843269, at *12 (M.D.N.C. May 5, 2017) (recommendation adopted in full by the district court).

"[W]here, as in this dispute, state employees do not have broad authority (or, indeed, any authority) to deprive persons of their property or liberty, and do not have a duty to provide the procedural safeguards required before a deprivation occurs, the Parratt/Hudson doctrine . . . bars a § 1983 procedural due process claim based on the employees' random and unauthorized conduct" when

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

"a meaningful postdeprivation remedy for the loss is available."
Bogart, 396 F.3d at 563 (emphasis in original). Therefore, the
Court concludes that Reed has not alleged an actionable violation
of her Fourteenth Amendment right to procedural due process.

**2.   Under Color of Law**

Next, the Court must assess whether Reed's Fourth Amendment
claim results from action allegedly taken under color of state law.
"In cases construing section 1983, 'under color' of law has been
treated consistently as equivalent to the 'state action'
requirement under the Fourteenth Amendment." Goldstein v. Chestnut
Ridge Volunteer Fire Co., 218 F.3d 337, 341 (4th Cir. 2000)
(quoting Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d
211, 215 (4th Cir. 1993)).

> [S]tate action requires both an alleged constitutional
> deprivation "caused by the exercise of some right or
> privilege created by the State or by a rule of conduct
> imposed by the State or by a person for whom the State is
> responsible" and that "the party charged with the
> deprivation must be a person who may fairly be said to be
> a state actor."

Am. Mfrs., 526 U.S. at 50.

Here, there can be little doubt – and the parties do not
appear to dispute – that Officer Clyde's alleged actions were taken

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

under color of state law. Cf. Revene v. Charles Cty. Com'rs, 882 F.2d 870, 872 (4th Cir. 1989) (holding that even an off-duty officer may act under color of state law depending on "the nature of the act performed"); see also Robinson v. Prince George's Cty., Md., No. PJM 09-181, 2011 WL 1743263, at *3 (D. Md. May 6, 2011) ("Both parties implicitly accept that Jenkins, as a uniformed police officer driving a police vehicle, was acting under color of state law at the time of the incident."). Indeed, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 50 (1988).

Whether Sell and Masterful Designs can be charged with "state action" is a separate question, however. Critically,

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the state or its agents. Private persons, jointly engaged with state officials in a challenged action, are acting . . . "under color" of law for purposes of § 1983 actions.

Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). "[C]onduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State," Lugar, 457 U.S. at 937, but "there is

23

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

no specific formula for defining state action." Rossignol v.
Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Hicks v. S.
Md. Health Sys. Agency, 737 F.2d 399, 402 n.3 (4th Cir. 1984)).
"What is fairly attributable is a matter of normative judgment,"
and the Supreme Court has "identified a host of facts that can bear
on the fairness of such an attribution." Brentwood Academy v. Tenn.
Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295-96 (2001). For
instance, it has sanctioned the "public function" test, the "state
compulsion" test, the "nexus" test, and the "joint action" test.
Lugar, 457 U.S. at 939.

The Court's approach to this "question begins by identifying
'the specific conduct of which the plaintiff complains.'" Am.
Mfrs., 526 U.S. at 51 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004
(1982)). Reed alleges that Sell and Masterful Designs circumvented
the appropriate judicial process by carrying out an unlawful, self-
help eviction. Critically, this eviction allegedly was accomplished
due in large part to threats of arrest by both Sell and Officer
Clyde in the event that Reed failed to vacate the property as
instructed (Dkt. No. 35 at 3-5). In fact, Reed alleges that she

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

credited Sell's actions as lawful due to Officer Clyde's presence and statements. Id. at 4.

Courts have recognized that such affirmative participation by law enforcement officers in allegedly unlawful evictions can suffice to give private conduct "the character of state action." Howerton v. Gabica, 708 F.2d 380, 384 (9th Cir. 1983); see also Edmond v. Maher, No. DKC-07-2883, 2007 WL 5391046, at *3 (D. Md. Nov. 13, 2007) (reasoning that using police to facilitate an illegal repossession may constitute state action). In Howerton, the plaintiffs were evicted from their trailer after falling behind on rent. The landlord did not follow the state's unlawful detainer process, but instead asked a uniformed police officer to accompany him when serving a notice of eviction and shutting off the plaintiffs' utilities. Howerton, 708 F.2d at 381.

The Ninth Circuit reasoned that, although "[a] single request for the police to perform their peace-keeping functions may not be sufficient to make a landlord a 'joint actor' with the state for section 1983 purposes," the eviction was "under color of state law" because the landlords "repeatedly requested aid by the police to effect the eviction, and the police intervened at every step."

Id. at 385. This constitutes a "substantial degree of cooperation" sufficient to establish "joint action" under § 1983. Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002).

Construing Reed's allegations in the light most favorable to her, the Court is not convinced that she "can prove no set of facts in support of [her] claim which would entitle [her] to relief" against Sell and Masterful Designs. Presley, 464 F.3d at 488-89 (alteration in original) (quoting Conley, 355 U.S. at 45-46). Reed does not allege that Officer Clyde merely exercised his peace-keeping function during the course of her expulsion from the property, but rather that he arrived at the property on multiple occasions during her eviction, spoke with Sell, and threatened her with arrest if she did not leave within a certain time, a threat Sell also had made (Dkt. No. 35 at 3-5). At this stage, Reed's allegations are subject to the reasonable inference that Sell, Masterful Designs, and Officer Clyde were acting in concert to effect the eviction, and thus that Sell and Masterful Designs acted "under color of state law" by engaging in "joint action" with Officer Clyde.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

In summary, Reed's second amended complaint alleges the deprivation of her Fourth Amendment rights, but she has no viable claim under the Fourteenth Amendment due process clause. Because the defendants allegedly cooperated to effect her expulsion, Reed has stated a claim that the deprivation occurred under color of state law such that the defendants may be subject to liability under § 1983. The Court therefore **DENIES** the defendants' motions as to Count One - Reed's Fourth Amendment claim - but **GRANTS** the defendants' motions as to Count Two - Reed's Fourteenth Amendment claim.

B.    **State Constitutional Claims**

In addition to her federal constitutional claims, Reed alleges that Officer Clyde deprived her of the rights guaranteed by Article III, Sections 6, 10, and 17 of the West Virginia Constitution (Dkt. No. 35 at 6-8).[8] Officer Clyde argues that these claims should be dismissed because he is entitled to statutory immunity under West Virginia law (Dkt. No. 51 at 9-11).

---

[8] Although not immediately apparent from the second amended complaint (Dkt. No. 35 at 6-8), Reed has since clarified that she does not assert these claims against Sell and Masterful Designs (Dkt. No. 52 at 9).

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]

Article III, Section 6 of the West Virginia Constitution provides, in part, that "[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures shall not be violated." Unless it is found to be more protective of individual rights, see State v. Mullens, 650 S.E.2d 169, 188 (W. Va. 2007), the provision "is generally construed in harmony with the Fourth Amendment of the United States Constitution." Ullom v. Miller, 705 S.E.2d 111, 117 n.4 (W. Va. 2010). In addition, Article III, Section 10 provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." This clause "requires that whenever the government for itself or for litigants, takes property from the possession of a person, a pre-seizure hearing be held to determine whether the seizure is rightful, except when such taking is a justifiable exercise of the police power of the state." Syl. Pt. 1, Tomchin Furniture Co. v. Lester, 309 S.E.2d 73 (W. Va. 1983) (quoting Syl. Pt. 1, State ex rel. Yanero v. Fox, 256 S.E.2d 751 (W. Va. 1979)).

Although Officer Clyde's conduct is governed by these provisions, he also is clearly entitled to immunity from Reed's

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

related claims. In West Virginia, the Governmental Tort Claims and Insurance Reform Act "provide[s] immunity to political subdivisions in certain instances." W. Va. Code § 29-12A-1. Political subdivisions are defined to include municipalities, which "means any incorporated city, town or village and all institutions, agencies or instrumentalities of a municipality." § 29-12A-3(b), (c). An "employee" is one "who is authorized to act and is acting within the scope of his or her employment for a political subdivision." § 29-12A-3(a). Critically, "[a]n employee of a political subdivision is immune from liability unless one of the following applies: (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) Liability is expressly imposed upon the employee by a provision of this code." § 29-12A-5(b).

Public officials thus are entitled to statutory immunity "unless it is shown by specific allegations that the immunity does not apply." Hutchison v. City of Huntington, 479 S.E.2d 649, 657-58 (W. Va. 1996). When a plaintiff's complaint is bereft of specific

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

allegations regarding an exception to statutory immunity, a public official is entitled to the dismissal of state law claims against him. See Osborne v. Cty. Comm'n of Kanawha Cty., No. 2:02-1250, 2003 WL 24272906, at *7-*9 (S.D.W.Va. Sept. 29, 2003), aff'd in part, vacated in part on other grounds, 143 F. App'x 554 (4th Cir. 2005); see also McCormick v. Walmart Stores, 600 S.E.2d 576, 583 (W. Va. 2004) (Maynard, C.J., dissenting) (noting the heightened pleading standard when immunity defenses are implicated by a plaintiffs' allegations). "[P]laintiffs' failure to allege specific exceptions under 29-12A-5(b) will result in the summary disposition of plaintiffs' claims." Douglas Holding Co. v. City of Princeton, No. 1:14-14200, 2016 WL 6909120, *4 (S.D.W.Va. Mar. 31, 2016) (quoting Burch v. Moore, No. 5:05-cv-00831, 2007 WL 760527, *9 (S.D.W.Va. Mar. 8, 2007)).

Here, there is no dispute that Officer Clyde was an employee of the Town of Barrackville, a West Virginia municipality, "acting within the scope of his employment with respect to all acts alleged in the Second Amended Complaint" (Dkt. Nos. 35 at 2; 53 at 8). Although Reed contends that limited jurisdictional discovery has revealed evidence from which a jury could infer that Officer Clyde

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

was acting with malicious purpose, in bad faith, or in a wanton or
reckless manner (Dkt. No. 53 at 9), her second amended complaint
simply does not contain any "specific allegations" of such conduct
(Dkt. No. 45). Therefore, because Reed has not alleged that Officer
Clyde's actions fall within the enumerated exceptions to West
Virginia's broad statutory immunity for public officials, the Court
**GRANTS** his motion for summary judgment with regard to Counts Three
and Four.

## C.    Fraud

In Count Five, Reed alleges that Sell and Masterful Designs
are liable for fraud because she relied on their material
misrepresentations that she would be subject to arrest (Dkt. No. 35
at 8-9).[9] "The essential elements in an action for fraud are: (1)
that the act claimed to be fraudulent was the act of the defendant
or induced by him; (2) that it was material and false; [(3)] that
plaintiff relied on it and was justified under the circumstances in
relying upon it; and [(4)] that he was damaged because he relied on

---

[9] Although not plain from the second amended complaint, which
refers to fraud and conversion by "Defendants" (Dkt. No. 35 at 9),
Reed has since clarified that her fraud and conversion claims do
not run against Officer Clyde (Dkt. No. 53 at 17).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

it." Syl. Pt. 5, <u>Folio v. City of Clarksburg</u>, 655 S.E.2d 143 (W. Va. 2007) (internal quotation and citation omitted).

Further, Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fourth Circuit has explained that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 782 (4th Cir. 1999).

In support of their argument that Reed failed to state a claim for fraud with the requisite particularity, Sell and Masterful Designs rely principally on this Court's decision in <u>Kerns v. Range Resources-Appalachia, LLC</u>, No. 1:10cv23, 2011 WL 197908 (N.D.W.Va. Jan. 18, 2011). In <u>Kerns</u>, the plaintiffs alleged that the defendant "made fraudulent misrepresentations to them regarding the work it intended to perform as well as the work that it 'actually performed under the terms of the parties' contract.'" <u>Id.</u> at *6. But the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

plaintiffs simply listed the elements of a fraud claim without providing any factual support "about when these representations were made, where they were made, or who made them." Id.

Here, Reed has sufficiently alleged a claim for fraud under West Virginia law; as well she has satisfied the heightened pleading standard under the Federal Rules. She alleges that, on July 10, 2015, Sell - and thus Masterful Designs - misrepresented that she would be arrested if she did not vacate her home by July 11, 2015 (Dkt. No. 35 at 4-5). Given the presence of law enforcement, she reasonably relied on Sell's statement, believing she would be subject to arrest if she did not leave the property as he demanded. Id. at 4, 9. As a result, Reed avers that she was damaged when she was forced to leave behind numerous items of personal property. Id. at 5. Therefore, the Court **DENIES** Sell and Masterful Designs' motion to dismiss Count Five.

**D.    Conversion**

In Count Six, Reed alleges that Sell and Masterful Designs wrongfully converted her personally property between July 9 and July 11, 2015 (Dkt. No. 35 at 9). "[A] civil action for conversion" allows recovery for "the exercise of dominion over the personal

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

property of another by a person who has no legal right to do so."

More particularly,

> [a]ny distinct act of dominion wrongfully exerted over
> the property of another, and in denial of his rights, or
> inconsistent therewith, may be treated as a conversion
> and it is not necessary that the wrongdoer apply the
> property to his own use. And when such conversion is
> proved the plaintiff is entitled to recover irrespective
> of good or bad faith, care or negligence, knowledge or
> ignorance.

Syl. Pt. 17, Rodgers v. Rodgers, 399 S.E.2d 664 (W. Va. 1990)

(quoting Syl. Pt. 3, Pine & Cypress Mfg. Co. v. Am. Eng'g &

Construction Co., 125 S.E. 375 (W. Va. 1924)).

The defendant's state of mind is irrelevant, id. at 677, but

"[c]ritical to any claim for conversion . . . is 'title or right of

possession.'" Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love,

LLP, 746 S.E.2d 568, 579 (W. Va. 2013) (quoting Thompson Dev., Inc.

v. Kroger Co., 413 S.E.2d 137, 142 (W. Va. 1991)). Moreover, "[i]t

has been generally recognized that where one assents to, or

ratifies, another's taking of his personal property, conversion

does not occur." Henry v. Wilson Ford, Inc., 399 S.E.2d 871, 875

(W. Va. 1990).

Here, the parties do not dispute that Reed had the right to

possess personal property that she abandoned at her former home.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

Reed has sufficiently alleged that Sell and Masterful Designs converted her personal property because she claims they exerted dominion over it only by unlawfully evicting her from the premises. Therefore, the Court **DENIES** Sell and Masterful Designs' motion to dismiss Count Six.

**E.    Defendant Sell**

As a final matter, Sell argues – without citing any legal authority – that he should be dismissed from this lawsuit in his individual capacity because he "would have been acting in his capacity as owner and operator of the limited liability company," Masterful Designs (Dkt. No. 49 at 4). On the other hand, although Reed does not dispute that Sell was acting in his capacity for Masterful Designs, she argues that it may be appropriate, following discovery, to "pierce the veil" of Masterful Designs and hold Sell personally liable for her injuries (Dkt. No. 52 at 6-17).

Under West Virginia law,

> To pierce the veil of a limited liability company in order to impose personal liability on its member(s) or manager(s), it must be established that (1) there exists such unity of interest and ownership that the separate personalities of the business and of the individual member(s) or managers(s) no longer exist and (2) fraud, injustice, or an inequitable result would occur if the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

veil is not pierced. This is a fact driven analysis that
must be applied on a case-by-case basis . . . .

Syl. Pt. 7, <u>Kubican v. The Tavern, LLC</u>, 752 S.E.2d 299 (W. Va.
2013) (relying, in part, on the standard for piercing the corporate
veil). Piercing the veil of a limited liability company is an
equitable remedy, not a cause of action. <u>Id.</u> at Syl. Pt. 5; <u>Laya v.
Erin Homes, Inc.</u>, 352 S.E.2d 93, 98 (W. Va. 1986).

Although Reed "bears the burden of demonstrating the required
factors for piercing the veil" of Masterful Designs, <u>Myers v.
DuBrueler</u>, No. 3:15-CV-56, 2016 WL 3162063, at *3 (N.D.W.Va. June
3, 2016) (dismissing a claim against an LLC member "[b]ecause the
Plaintiff ha[d] failed to plead any facts in relation to piercing
the LLC veil"), at the motion to dismiss stage, the plaintiff's
burden to state a facially plausible claim is a light one. <u>Tobia v.
Loveland</u>, No. 5:16CV187, 2017 WL 2113752, at *2 (N.D.W.Va. May 15,
2017) (finding sufficient an allegation that the defendant
"personally benefitted from the employment of [the plaintiff] under
false pretenses"). Here, Reed names Sell as the organizer, owner,
and operator of Masterful Designs, and alleges actions he undertook
with regard to Masterful Designs' acquisition of her home at
foreclosure (Dkt. No. 35 at 2-3). Tellingly, she also alleges that

36

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

Sell and his wife – who has no apparent connection to Masterful Designs aside from her marriage to Sell – "went through her personal property, discarding some items and loading others into their car." Id. at 5. From these allegations, it is facially plausible that Sell should be held liable "on grounds that are not based solely on [his] status as a member or manager of" Masterful Designs. Kubican, 752 S.E.2d at 306. Therefore, the Court **DENIES** Sell's motion to be dismissed in his individual capacity.

### IV. CONCLUSION

For the reasons discussed, the Court:

- **DENIES** Sell and Masterful Designs' motion to dismiss Counts One, Five, and Six, as well as Sell's motion to be dismissed in his individual capacity (Dkt. No. 48);

- **DENIES AS MOOT** Sell and Masterful Designs' motion to dismiss Counts Three and Four (Dkt. No. 48);

- **GRANTS** Sell and Masterful Designs' motion to dismiss Count Two (Dkt. No. 48);

- **DENIES** Officer Clyde's motion for summary judgment on Count One (Dkt. No. 50);

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS SELL AND MASTERFUL DESIGNS'
MOTION TO DISMISS [DKT. NO. 48] AND DEFENDANT OFFICER
CLYDE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 50]**

- **DENIES AS MOOT** Officer Clyde's motion for summary
  judgment on Counts Five and Six (Dkt. No. 50); and

- **GRANTS** Officer Clyde's motion for summary judgment on
  Counts Two, Three, and Four (Dkt. No. 50).

The Court will set a further scheduling conference in this
case by separate order.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order
to counsel of record.

DATED: October 13, 2017.

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE